NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 13-385 (SRC) |
| v. | OPINION AND ORDER |
| DAVID NICOLL, | |
| Defendant. | |

**CHESLER**, District Judge

This matter comes before the Court upon the Court's April 29, 2015 Order (Doc. No. 114), which directed the Government to show cause as to why the Court should not vacate its preliminary order of forfeiture with respect to Condominium Unit 4H located at 635 West 42 Street, New York, New York ("the Condominium"). In response to the Court's Order, the Government filed an in camera submission, with the consent of the attorneys who represent Defendant David Nicoll and third-party petitioner Melissa Singh. The Court executed a sealing order as to that submission. Having reviewed the Government's papers, the Court is now satisfied that the Government has demonstrated the requisite nexus between Defendant Nicoll's criminal acts and the Condominium. The Court will accordingly discharge its Order to Show Cause, and it will not vacate the preliminary order of forfeiture.

I. **Background**

This Court thoroughly reviewed the factual and procedural background of this matter in an earlier Opinion (Doc. No. 114), and will only briefly recount it here. In April of 2013, the United States Government charged Defendant Nicoll in connection with a physician-bribery

1

scheme. Defendant pleaded guilty. Pursuant to the plea deal, Defendant consented to the forfeiture of property and admitted that such property had a nexus with the unlawful acts to which he pleaded guilty. Included in that list of property is the Condominium. Petitioner Singh lives in the Condominium and holds title to it. She purchased the property on January 31, 2008, with money that Defendant gave her.

On October 23, 2013, this Court entered a First Preliminary Order of Forfeiture with respect to the Condominium. Ms. Singh filed a petition asserting her interest in the Condominium, claiming that it belongs to her. The Government moved to dismiss the petition. In an Opinion and Order dated April 29, 2015, this Court dismissed Ms. Singh's petition. The Court nevertheless found that the Government had relied exclusively upon Defendant's stipulation that a nexus exists between the Condominium and his crimes, which was insufficient. See Libretti v. United States, 516 U.S. 29, 43 (1995); Advisory Committee Notes to Fed. R. Crim. P. 32.2(b). The Court therefore directed the Government "to submit additional factual stipulations, affidavits, and/or other documentary evidence of its choosing, which will make the necessary nexus showing." (Doc. No. 114). The Court instructed that if the Government failed to carry its burden, it would "vacate the portion of the preliminary order that pertains to the Condominium Unit." (Id.).

## II. Discussion

The issue before the Court is "whether the government has established the requisite nexus between" the Condominium and Defendant's criminal acts. See Fed. R. Crim. P. 32.2. The Court must assess if the Condominium would have not been acquired "but-for" Defendant's crimes. United States v. Ofchinick, 883 F.2d 1172, 1183 (3d Cir. 1989). The Government must make this demonstration by a preponderance of the evidence. United States v. Sandini, 816 F.2d

869, 876 (3d Cir. 1987); United States v. Voigt, 89 F.3d 1050, 1082, 1087 (3d Cir. 1996). For the reasons that follow, the Court finds that the Government has met its burden.

In response to this Court's Order, the Government submitted the Declaration of an FBI Special Agent, together with five documentary exhibits. The Declaration establishes that the proceeds from Defendant's business, Biodiagnostic Laboratory Services, LLC ("BLS"), were tainted by a widespread bribery scheme. Specifically, the Court gathers from the Declaration that: prior to the implementation of the bribery scheme, BLS was not a profitable venture; then, between 2006 and 2012, BLS generated over $100 million in profits through referrals from doctors whom BLS bribed. Not every dollar from BLS came from the criminal scheme, and indeed BLS generated substantial funds through legitimate means. Yet the Government need not trace each dollar in BLS coffers to a criminal rather than a legitimate operation. The Government has instead shown that "the very nucleus of [the BLS] business model [was] rotten and malignant" and that its "entire operation was permeated with fraud." United States v. Warshak, 631 F.3d 266, 332 (6th Cir. 2010). Because BLS depended on massive fraud, BLS's proceeds are tainted by criminality. See United States v. Farkas, Crim. No. 10-200-LMB, 2011 WL 5101752, at *3 (E.D. Va. Oct. 26, 2011) ("[B]ecause [Defendants'] fraudulent activity enabled [their corporation] to remain in the business of obtaining mortgage funding, securitizing mortgages, and selling mortgage-backed securities, 'proceeds' must be interpreted sufficiently broadly to capture the [their] gross receipts even if those receipts cannot be directly attributable to, for example, a particular fraudulent loan."), aff'd, 474 F. App'x 349 (4th Cir. 2012).

Having accepted the Government's demonstration that BLS proceeds trace to Defendant's criminal acts, the Court is also satisfied that BLS proceeds allowed for the purchase of the Condominium. Specifically, the Government's submission outlines the following: BLS

deposited all profits from its unlawful scheme into a BLS Operating Account; from there, Defendant Nicoll's distributions from the scheme were transferred from the BLS Operating Account to Defendant's PNC Bank Account in his name; Defendant then transferred funds from his PNC Bank Account to his account at Valley National Bank; finally, and critically, the Condominium was purchased with funds from the Valley National Bank account. Additionally, the Valley National Bank Account was funded almost entirely from the PNC Bank Account which, in turn, was funded almost entirely from the BLS Operating Account.

These facts adequately demonstrate a link between the purchase of the Condominium and BLS proceeds, and a connection between BLS proceeds and the bribery scheme. In tandem, a nexus demonstration has been made between the Condominium and Defendant's crimes.

I.   CONCLUSION

For the reasons above, the Court finds that the Government has demonstrated by a preponderance of the evidence that a "nexus" exists between Defendant's criminality and the Condominium. Therefore,

**IT IS** on this 9th day of July, 2015,

**ORDERED** that the Court's Order to Show Cause (Docket Entry 114) be and hereby is **DISCHARGED**; and the Preliminary Order of Forfeiture shall not be vacated.

                                                      s/ Stanley R. Chesler  
                                                     STANLEY R. CHESLER  
                                                   United States District Judge